DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CITIZENS AWARENESS FOUNDATION, INC.,**
Appellant,

v.

**WANTMAN GROUP, INC.,**
Appellee.

No. 4D15-1760

[May 25, 2016]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Meenu Sasser, Judge; L.T. Case No. 2014-CA-005771 AI.

Daniel Desouza of Desouza Law, P.A., Fort Lauderdale, and Nick Taylor of The O'Boyle Law Firm, Deerfield Beach, for appellant.

Gerald F. Richman and Leora B. Freire of Richman Greer, P.A., West Palm Beach, for appellee.

GROSS, J.

This case concerns entitlement to attorney's fees in a public records case. The trial court ruled against the party seeking fees. We affirm the circuit court's summary final judgment because there was no unlawful refusal to provide the records, which would have justified an award of attorney's fees.

Wantman Group, Inc. and the South Florida Water Management District entered into a contract in which Wantman agreed to provide consulting services to the District. Article 8.8 of the contract governs public records requests:

> The CONSULTANT shall, at its own expense, allow public access to all project documents and materials in accordance with the provisions of Chapter 119, Florida Statutes. If at any time the DISTRICT requests copies of CONSULTANT'S records in response to a public records request, Consultant shall, at its own expense, promptly provide copies of all of its records in whatever format reasonably requested by the District.

> Should the CONSULTANT assert any exemptions to the requirements of Chapter 119 and related Statutes, the burden of establishing such exemption, by way of injunctive or other relief as provided by law, shall be upon the CONSULTANT. The CONSULTANT shall refer any public records requests for project documents covered by this provision to the DISTRICT and the DISTRICT will handle the request.

The contract named Robin Petzold as the "consultant" and provided a phone number and e-mail address. Significantly, the contract called for Wantman to direct "any public records requests" to the District, an agency familiar with the area.

On April 19, 2014, a public records request was submitted by e-mail to the contract e-mail address, with the additional language "DidTheyReadIt.com" attached at the end of the address. The subject line of the e-mail stated: "This is a public records request," and it indicated it was sent from "An Onoma." The body of the e-mail stated:

> **<u>Custodian of Public Records for Wantman Group, Inc.</u>**
>
> Please provide the following records:
>
> Certificate of Insurance referenced on page 6 of 16 of the South Florida Water Management District contract 4600002690.
>
> All responsive records should be delivered to Vendor.Contract.Publishing@Gmail.com. If for some reason Wantman Group, Inc. contends that the requested records are exempt from disclosure please explain with particularity the rational [sic] for such an assertion. Please provide a written estimate of any costs prior to such costs being incurred.
>
> Thank you for your prompt attention to this matter.
>
> VCP-0000-0000-0011.

After the April 19 request went unanswered, on May 8, 2014, appellant Citizens Awareness Foundation, Inc. ("CAFI") filed a two-count complaint against Wantman to enforce Florida's public records act. CAFI alleged that under the terms of the contract between Wantman and the District, the District delegated the duty to create and maintain certain records to Wantman. Count I was for unlawful withholding of electronic records, and

Count II was for unlawful withholding of public records due to an unreasonable delay. CAFI specifically asked the court to enter an order declaring Wantman to be in breach of its duty to permit access to public records, compelling Wantman to provide access to such records, and awarding CAFI attorney's fees and costs, pursuant to section 119.12, Florida Statutes (2014).

Wantman answered on June 4, 2014, denying that it ever received a public records request. However, Wantman asserted that it had "voluntarily provided" the requested records.

Wantman moved for summary judgment, arguing that it was not subject to the public records law and, even if it was, it did not wrongfully refuse to produce the requested document. The e-mail request appeared to be spam; it was not until the filing of the lawsuit that Wantman learned that the e-mail was a legitimate records request. Shortly after the lawsuit was filed, Wantman voluntarily provided the requested document to CAFI. Attached to the motion was David Wantman's affidavit, swearing that he "believed the request was illegitimate and spam." Wantman also attached an affidavit of the District's Bureau Chief swearing that Wantman is an independent contractor without the authority to act on behalf of the District. Finally, Wantman attached a copy of the e-mail request and a copy of the letter producing the requested document, dated May 29, 2014.

CAFI opposed Wantman's summary judgment motion and cross-moved for summary judgment. To its motion, CAFI attached its responses to Wantman's statement of uncontested facts, a copy of the contract between Wantman and the District, an advisory legal opinion, a copy of the e-mail request, and a copy of Wantman's interrogatory responses.

After a hearing, the circuit court granted Wantman's motion and entered summary judgment in its favor. In its detailed written order, the court concluded that the record was not "sufficiently crystallized" to determine whether Wantman was subject to the public records law. The court assumed "arguendo" that Wantman was subject to the law and continued on to consider whether Wantman unlawfully refused the request. The court heavily relied on a first district case, *Consumer Rights, LLC v. Union Cty.,* 159 So. 3d 882 (Fla. 1st DCA 2015), finding it was "analogous with the instant case in all material respects."

"Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

- 3 -

The public records law provides that "[e]very person who has custody of a public record shall permit the record to be inspected and copied by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public records." § 119.07(1)(a), Fla. Stat. (2014).

> A custodian of public records . . . must acknowledge requests to inspect or copy records promptly and respond to such requests in good faith. A good faith response includes making reasonable efforts to determine from other officers or employees within the agency whether such a record exists and, if so, the location at which the record can be accessed.

§ 119.07(1)(c), Fla. Stat.

> If a civil action is filed against an agency to enforce the provisions of this chapter and if the court determines that such agency *unlawfully refused* to permit a public record to be inspected or copied, the court shall assess and award, against the agency responsible, the reasonable costs of enforcement including reasonable attorneys' fees.

§ 119.12, Fla. Stat. (emphasis added). "The statutory purpose is to encourage voluntary compliance with Florida's public records law, which gives effect to the state's policy 'that all state, county, and municipal records shall be open for personal inspection by any person.'" *Office of State Attorney for Thirteenth Judicial Circuit of Fla. v. Gonzalez*, 953 So. 2d 759, 763 (Fla. 2d DCA 2007) (quoting § 119.01(1), Fla. Stat. (2002)).

Section 119.12 provides for attorney's fees if the court determines that the failure to provide records in response to a request amounted to an unlawful refusal. "By its terms, this section places several conditions on the right to an award of fees. The court must determine that the agency has 'refused' to provide the records and the refusal must be 'unlawful.'" *Consumer Rights,* 159 So. 3d at 885. As the second district explained:

> [A]ttorney's fees are awardable for unlawful refusal to provide public records under two circumstances: first, when a court determines that the reason proffered as a basis to deny a public records request is improper, and second, when the agency unjustifiably fails to respond to a public records request by delaying until after the enforcement action has been commenced.

*Gonzalez*, 953 So. 2d at 764.

"Unlawful refusal under section 119.12 includes not only affirmative refusal to produce records, but also unjustified delay in producing them." *Yasir v. Forman*, 149 So. 3d 107, 108 (Fla. 4th DCA 2014) (quoting *Lilker v. Suwannee Valley Transit Auth.*, 133 So. 3d 654, 655-56 (Fla. 1st DCA 2014)). "Where delay is at issue, as here, the court must determine whether the delay was justified under the facts of the particular case." *Lilker*, 133 So. 3d at 655. It is only an "*[u]njustified* delay in making non-exempt public records available [that] violates Florida's public records law." *Promenade D'Iberville, LLC v. Sundy*, 145 So. 3d 980, 983 (Fla. 1st DCA 2014).

We agree with the circuit court that this case is controlled by *Consumer Rights*.

*Consumer Rights*, like this case, involved a curious e-mail request for records that did not trigger an immediate response. There, the appellant made a public records request from the e-mail address "ask4records@gmail.com" to the county at "UCBOCC@windstream.net," "an email address posted on the county's website and not associated with a particular county employee." 159 So. 3d at 883. The request was made on behalf of an unidentified "Florida company" and was submitted by an unnamed agent of the company. *Id.* Other than the e-mail address, "the request did not contain any information as to how the county might contact the agent or the corporation." *Id.*

Four months after sending the request, and not receiving the requested documents, the appellant sued the county, seeking "injunctive relief, a writ of mandamus and an award of attorney fees." *Id.* at 884. The county provided all of the records, thus narrowing the issues to injunctive relief and attorney's fees. *Id.* After an evidentiary hearing, the trial court "concluded that the delay in providing the records was not tantamount to an unlawful refusal and that the plaintiff was not therefore entitled to an award of attorney fees." *Id.* In explaining the trial court's analysis, the First District emphasized the finding by the trial court "that the county had not acted in bad faith by failing to provide the records sooner." *Id.* The trial court reasoned that the records request was "'intentionally designed to appear to be deceptive' . . . based on the testimony of a county official who explained that he did not respond to the records request immediately because it appeared to constitute 'phishing.'" *Id.*

On review, citing section 119.07(1)(c), the First District determined that "[t]he public records law imposes a duty of good faith on public officers

who are charged with the responsibility of complying with the law." *Id.* at 885. And "[w]hether a governmental entity acted in 'good faith' . . . is necessarily a question for the court to decide based on the circumstances of a case." *Id.*

Looking closely at the actual e-mail request, the court noted that it "was made by an unnamed agent for an undisclosed company and it was sent to the county from an e-mail address that did not appear to be the address of a person." *Id.* at 886. As Judge Padovano observed,

> The email from the sender could have contained a virus. It might have been a computer-generated message sent out from a computer-created email account. The sender might have intended to initiate a series of electronic communications that would have caused the disclosure of exempt materials or created difficulties for the county's information technology officers
>
> . . . But the delay in this case could have been avoided altogether if the plaintiff had just given the county a phone number or some other contact information that could be associated with a person. In that event, the county could have simply contacted the plaintiff to verify that the email was authentic.

*Id.* Finally, the court rejected the appellant's argument that the county could have written to him at the e-mail address provided in the request. *Id.* The court explained that such an argument "plainly reads too much into the obligations created by the public records law" because section 119.07 "is a right that can only be exercised by a 'person.'" *Id.* "We know of no law that requires a governmental entity to provide public records to a generic e-mail address, at least not until such time as it is made clear that the address belongs to a person." *Id.*

*Consumer Rights* concluded by noting that the records were provided to the appellant once authenticity was verified. *Id.* "We have no reason to believe that the county would not have provided the records much sooner had it been able to verify the authenticity of the plaintiff's email and thus we have no reason to question to [sic] trial court's conclusion that the county acted in good faith." *Id.* Therefore, "the delay in responding to the email was not tantamount to a refusal and . . . the trial court correctly denied the plaintiff's request for attorney fees." *Id.* at 886-87.

As in *Consumer Rights*, the delay in providing the records in this case was not so "unjustifiable" that it amounted to an "unlawful refusal" to provide the record. *Id.* at 885. The request was made in a "suspicious email that could not be easily verified," from an undisclosed sender. There was no indication that the e-mail request was made on behalf of a person or company. The e-mail did not contain any information about how to contact the person or corporation making the request. There was an incorrectly spelled word in the e-mail, which is one of the markers of spam. This is the type of e-mail that is filtered out as spam by many businesses, along with requests for assistance in moving money out of Nigerian banks. The e-mail was directed to an independent contractor and not a governmental agency familiar with fielding public records requests. Appellant waited merely 18 days, without any further inquiry, and then filed suit, claiming a right to attorney's fees. We agree with the analysis of Judge Sasser:

> [T]he email was sent to robin.petzold@xxxxxxx.com.didtheyreadit.com. Neither the underlying contract nor [Wantman's] website identifies Robin Petzold (or anyone else) as a custodian of public records. Further, the "didtheyreadit.com" extension rendered the email address one not recognized by [Wantman's] computer network. For these reasons the Request itself was one that "would lead anyone familiar with the perils of email communication to exercise caution, if not to disregard the communication entirely." *Consumer Rights*, [159 So. 3d at 886].

> The undisputed evidence in this case also confirms that [Wantman] acted in good faith and that its delay in responding was attributable to the suspicious nature of the email. [Wantman] has presented unrebutted affidavit testimony that it believed the Request to be illegitimate and spam and for that reason did not respond to it.

We conclude that there was no "unlawful refusal" to provide public records.[1] The public records law should not be applied in a way that encourages the manufacture of public records requests designed to obtain no response, for the purpose of generating attorney's fees.

---

[1] Because we affirm the circuit court on these grounds, we do not reach the issue of whether Wantman was subject to the public records law.

CAFI relies heavily on *Chandler v. City of Greenacres*, 140 So. 3d 1080 (Fla. 4th DCA 2014), but that case primarily concerns the issue of standing, not whether there was an "unlawful refusal" of a public records request that gave rise to an entitlement to attorney's fees.

In *Chandler*, the circuit court denied the petitioner's petition for writ of mandamus to compel production of public records "finding that the petition failed to show appellant's standing to bring the action." *Id.* at 1082. The records request was an e-mail sent to the City from "leo.namesxxx@xxxxx." *Id.* This Court noted that "[a]lthough the attached e-mail did not include a person's name, the body of the e-mail used the pronouns 'I' and 'me.'" *Id.* The appellant had sent three other e-mails to city employees requesting documents from the same e-mail address. *Id.* The city clerk responded to the e-mails notifying the sender that they must fill out a form on the city's web page in order to obtain such documents. *Id.* When no form was filled out, and the same sender e-mailed again requesting the same documents, the city clerk again directed the sender to the online form. *Id.*

After a month of no response, the petitioner filed a petition for writ of mandamus, demanding production of the records and also seeking attorney's fees and costs under the public records law. *Id.* The city moved to dismiss "arguing that appellant lacked standing to bring the petition because it did not allege that appellant was a 'stakeholder in interest.'" *Id.* On appeal, this Court held that appellant had standing to bring the action. *Id.*

The portion of *Chandler* on which CAFI urges this Court to focus provides:

> We agree with the Attorney General that '[a] person requesting access to or copies of public records, therefore, may not be required to disclose his [or her] name, address, telephone number or the like to the custodian, unless the custodian is required by law to obtain this information prior to releasing the records.'

*Id.* at 1084 (alterations in original) (quoting Op. Attorney Gen. Fla. 92-38 (1992)). We concluded that "the city could not properly condition disclosure of the public records, to the then-anonymous requester on filling out the city's form and giving an 'address or other identifiable source for payment of the associated costs.'" *Id.* at 1085. "Requiring appellant to provide further identifying information prior to disclosure could have a

chilling effect on access to public records and is not required by the Public Records Act." *Id.*

The focus of *Chandler* was that anonymous requests for public records were permissible. The case had nothing to do with whether a violation of the Public Records Act had occurred and the propriety of awarding attorney's fees. There is a difference between allowing anonymous public records requests and evaluating an agency's response when such requests are justifiably handled with caution.

We also distinguish the recent case of *Board of Trustees v. Lee*, 2016 WL 1458515 (Fla. Apr. 14, 2016), where the Florida Supreme Court held that a prevailing party is entitled to statutory attorney's fees when an agency unlawfully refused to permit the inspection or copying of a record which is a violation of the Public Records Act. In that case, the trial court found a violation of section 119.07. *Id.* at *2. The denial of fees in this case was based on the conclusion that there was no "unlawful refusal" by an agency so there was no violation of the Public Records Act that triggered entitlement to statutory attorney's fees.

*Affirmed.*

STEVENSON and FORST, JJ., concur.

* * *

**Not final until disposition of timely filed motion for rehearing.**